UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re: ) | |
| ) | |
| **SCOTT R. VERRILL,** ) | **Chapter 7** |
| ) | **Case No. 07-20072** |
| Debtor. ) | |
| ) | |
| **JOHN AND CATHY COSTA,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. Proc. No. 06-_____ |
| ) | |
| **SCOTT R. VERRILL,** ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR AND
DISCHARGEABILITY OF CERTAIN DEBTS**

John and Cathy Costa (the "Plaintiffs") complain against Defendant, Scott R. Verrill (the "Defendant") as follows:

**THE PARTIES**

1. Plaintiff, John Costa, is an individual residing, at all times relevant hereto, in the Town of Falmouth, County of Cumberland, State of Maine.

2. Plaintiff, Cathy Costa, is an individual residing, at all times relevant hereto, in the Town of Falmouth, County of Cumberland, State of Maine.

3. Plaintiffs are husband and wife.

4. The Defendant is an individual residing in Cumberland, County of Cumberland, State of Maine.

**JURISDICTION AND VENUE**

5. On February 2, 2007 (the "Petition Date"), Defendant filed with this Court a

voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Code").

6. This Court has jurisdiction over the above-captioned Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and D. Me. Civ. R. 83.6(a), pursuant to which all cases filed in Maine under the Code and civil proceedings arising under the Code or arising in or related to cases under the Code are referred to bankruptcy judges of this district.

7. Venue of the above-captioned Chapter 7 case is proper in this Court pursuant to 28 U.S.C. § 1408(1).

8. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

9. This is a core proceeding. This Court has jurisdiction to enter final orders and judgments in this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E) and (O).

## **GENERAL ALLEGATIONS**

10. On or about June 10, 2001, Plaintiffs entered into a construction agreement (the "Construction Agreement") with Verrill & Chase Builders, Inc. ("Verrill & Chase"). A true and correct copy of the Construction Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference. Pursuant to the terms of the Construction Agreement, Verrill & Chase agreed to build a residence for Plaintiffs in Falmouth, Maine.

11. At the time of entering into the Construction Agreement, the only shareholders of Verrill & Chase were Susan Lynn Chase and the Defendant. Ms. Chase and Defendant were married at the time the Construction Agreement was executed but are currently divorced.

12. Plaintiffs made all of the payments to Verrill & Chase in accordance with the terms of the Construction Agreement, including making additional payments for "change orders" for work required to be performed under the terms of the Construction Agreement. Despite receiving the payments from Plaintiffs, Verrill & Chase failed to provide the goods and services to Plaintiffs in accordance with the term of the Construction Agreement.

13. Premised on Verrill & Chase's breach of the Construction Agreement, and in hopes of resolving the issues between the parties, on July 28, 2004, Plaintiffs and Verrill & Chase entered into a separate agreement pursuant to which the parties agreed to arbitrate "all disputes arising out of or relating to the construction of the Costas home by Verrill and Chase" (the "Arbitration Agreement"). A true and correct copy of the Arbitration Agreement is attached hereto as **Exhibit B** and is incorporated herein by reference.

14. Pursuant to the Arbitration Agreement, Plaintiffs submitted Plaintiffs' claims against Verrill & Chase that arose out of or related to the construction of Plaintiffs' home to Peter Detroy, Esquire as arbiter (the "Arbiter").

15. On January 10, 2005, after notice to all parties, Plaintiffs presented their evidence to the Arbiter at the Arbiter's offices in Portland, Maine, County of Cumberland. Verrill & Chase failed to attend the Arbitration. After considering all the evidence, the Arbiter issued the Arbitrator's Decision and Award (the "Award"). A true and correct copy of the Award is attached hereto as **Exhibit C** and is incorporated herein by reference.

16. The Award provided that the net sum owed by Verrill & Chase to Plaintiffs was $71,192.99.

17. As set forth in the Award, this amount consisted of the following:

- Work mandated under contract but not completed resulting in damages of **$11,945.00**;

3

- Defective work resulting in damages of **$43,485.08**;

- Inappropriate change orders and charges resulting in damages of **$7,825.50**;

- Return of advanced payment resulting in damages of **$6,730.28**; and

- Contract work completed by Plaintiffs resulting in damages of **$19,957.13**.

The damage amounts set forth above were reduced by the Arbiter by **$18,750.00** premised on amounts held by Plaintiffs in escrow in relation to the Construction Agreement. It is important to note that the Arbiter specifically found that "Mr. Verrill charged for several 'change orders' for work that was included in the contract." [Award, ¶ 3]. In addition, the Arbiter also found that Mr. Verrill had requested an "advance" at closing for additional work to be completed by Verrill & Chase. [Award, ¶ 4]. Plaintiffs made the requested advance premised on the representation that the work would be performed. The work was never completed, however.

18. In addition, Defendant employed blackmail against Plaintiffs as part of his strategy to induce Plaintiffs to pay him sums of money that they were not obligated to pay. By letter dated April 25, 2003 (the "April Letter"), Defendant demanded payment of an invoice relating to windows and doors installed in Plaintiffs' home. In that letter, Defendant threatened to issue a Form 1099 to the Plaintiffs in an apparent threat to falsely inform the Internal Revenue Service of "taxable income" that the Plaintiffs purportedly received, thereby imposing on them an income tax liability, if the Plaintiffs did not comply with the Defendant's demand for payment. Of course, Defendant paid no income to Plaintiffs; if anything, the reverse is true, as Defendant worked for Plaintiffs and was compensated by Plaintiffs. Moreover, at the time of the April Letter, Plaintiffs had already paid for the windows and doors at issue. A true and correct copy of the April Letter is attached hereto as **Exhibit D** and is incorporated herein by reference.

19. Notwithstanding the fact that Plaintiffs had paid for the doors and windows, and

because Plaintiffs refused to pay twice, Defendant followed through on his threat and issued to Plaintiffs a Form 1099 in the amount of $27,750.00 for the calendar year 2003. A true and correct copy of the 1099 is attached hereto as **Exhibit E** and is incorporated herein by reference. Of course, the Form 1099 was false and fraudulent; and issued by Defendant with the intent to falsely and fraudulently induce Plaintiffs to pay money to Defendant.

20. Turning back to the Arbitration, on February 24, 2005, the Superior Court for Cumberland County entered an Order confirming the Award plus interest and costs (the "Confirmation Order"). A true and correct copy of the Confirmation Order is attached hereto as **Exhibit F** and is incorporated herein by reference. The Confirmation Order has become a final order.

21. After obtaining the Confirmation Order against Verrill & Chase, Plaintiffs sought to pierce the corporate veil of Verrill & Chase in order to proceed against the Defendant individually. By Order dated March 16, 2006, the Ninth District Court of Cumberland County (the "District Court") entered an Order piercing the corporate veil of Verrill & Chase and finding that Plaintiffs "have proven that Scott Verrill misused, abused, and disregarded the corporate form, and that an injustice would occur in terms of potential satisfaction of that judgment if the corporate form were imposed here" (the "Piercing Order"). A true and correct copy of the Piercing Order is attached hereto as **Exhibit G** and is incorporated herein by reference.

22. After the piercing of the corporate veil and the entry of a judgment against the Defendant personally (a true and correct copy of the Judgment is attached hereto as **Exhibit H** and is incorporated herein by reference (the "Judgment")), on July 5, 2006, the District Court entered a turnover order (the "Turnover Order") ordering Defendant to turnover to Plaintiffs the following (a true and correct copy of the Turnover Order is attached hereto as **Exhibit I** and is

5

incorporated herein by reference):

- The Defendant's 1991 300 SL Mercedes Convertible (the "Mercedes");
- The Defendant's 2000 F-250 Truck with proper Maine Certificate of Title endorsed by Defendant to Plaintiffs;
- The Defendant's snow trailer; and
- The Defendant's snowmobile.

In addition to all of the above, under the terms of the Turnover Order, Defendant was required to turnover to Plaintiffs certain documents relating to various business entities in which the Defendant held an interest.

23. The Defendant appealed the Turnover Order, however, by Order dated July 19, 2007, the Superior Court of Cumberland County denied the appeal.

24. In the face of the mandates set forth in the Turnover Order (upheld by the Superior Court), the Defendant failed to comply with the requirements of the Turnover Order. Instead, he either simply disregarded the requirements of the Turnover Order (for instance, Defendant refused to turnover his F-250 truck as required) or, as will be discussed below, he transferred assets to his live-in girlfriend and his father, with the intent to hinder, delay and defraud the Plaintiffs.

25. After all of the proceedings described above, Defendant filed for bankruptcy relief under Chapter 7 of the Code on February 2, 2007.

26. During the meeting of creditors in the Defendant's Chapter 7 case, the Defendant testified that he transferred the Mercedes to his live-in girlfriend, Ms. Denise St. Pierre ("St. Pierre") to reduce his obligations to St. Pierre *only after being informed by counsel for Plaintiffs that the Mercedes, among other assets, would be sold by Plaintiffs for their benefit*. Along these lines, the Defendant testified as follows:

Q: What prompted you to sell the Mercedes following the hearing?

A. Well, your associate, Mr. Bals, made it quite clear at that meeting that, you know, what little assists [sic] I had left, if I didn't liquidate them and pay down existing debt that he was going to have them sold, so

Q: So did you transfer the car to Ms. St. Pierre so that the Costas wouldn't get a hold of the car?

A. I sold the car to Denise St. Pierre to pay down debt.

Q: ***<u>Alright, but I'm interested in the timing of your selling it just after the hearing and what Mr. Bals told you. Was there any relationship between that and your decision at that time to transfer the car to Denise?</u>***

A: ***<u>I think it probably had, yeah, I'm sure it did.</u>*** (emphasis added).

Q: Now Denise St. Pierre, she is your girlfriend, isn't she?

A: Yes she is.

Q: And she lives with you right?

A: Yes.

Q: So you transferred the vehicle to her so that you could pay her debt and not the Costa debt, is that correct?

A: That is correct.

27. In addition to the Mercedes, the Defendant also testified at the meeting of creditors that he turned the snowmobile (an asset that was also the subject of the Turnover Order) over to his father, who resides next door, in return for his father making payment of indebtedness owed by Defendant to Defendant's uncle. In this regard, the Defendant testified as follows:

Q: Do you remember at the time of the hearing, you testified that you owned a snowmobile and a trailer?

A: Yes.

Q: Okay. And then sometime after the hearing you sold the snowmobile and the trailer, is that correct?

7

A: No. I actually I owed money on the snowmobile and where I couldn't afford the payments, I gave the snowmobile back. And then the snowmobile trailer, I do still have.

Q: Okay. Now let's talk about the snowmobile. How much was the debt on the snowmobile?

A: $3,000.00

Q: And to whom was the debt owed?

A: My uncle.

Q: . . . And had you used the snowmobile between 04 and the time that you turned it back to your uncle in 06?

A: Oh yeah a little bit.

Q: Have you used it since?

A: A little bit.

Q: When have you used it since?

A: Well the, my uncle had a bit of a fit about me returning it, so my father offered to pay the debt on the, and buy the snowmobile.

Q: So did your father buy the snowmobile from your uncle?

A: Yes.

Q: And did your father give you the snowmobile back?

A: No he has it at his house and my eight year old, we live right next door so we do use it from time to time.

28. From all of the above, it is clear that Defendant obtained money or other property of Plaintiffs by false pretenses, false representations and/or actual fraud by taking Plaintiffs' money by submitting false "change orders" to Plaintiffs for work required to be performed under the Construction Agreement and for demanding advance payment for work that Defendant never intended to complete.

29. It is also clear that Defendant, while acting as a fiduciary to Plaintiffs as an officer and/or shareholder of Verrill & Chase (upon information and belief, a corporation that was insolvent at all times relevant hereto), committed fraud or defalcation by, among other things, inducing Plaintiffs to make the "advance" payments to Defendant for work that Defendant never intended to complete and, additionally, for fraudulently submitting "change orders" to Plaintiffs for work required to be performed under the terms of the Construction Agreement itself. Furthermore, Defendant committed embezzlement by taking Plaintiffs' monies and using the same for matters other than the construction of Plaintiffs' home. These actions by Defendant also constitute willful and malicious injury to the property of Plaintiffs. For the reasons set forth in paragraphs 26 and 27 hereof, the obligations of Defendant to Plaintiffs should be excepted from discharge under Section 523 of the Code.

30. Lastly, it is clear that Defendant, with the intent to hinder, delay or defraud Plaintiffs, has transferred or removed property of the Defendant, namely the Mercedes and the snowmobile, within one (1) year prior to the Petition Date and, additionally, Defendant has failed to explain satisfactorily any loss of assets to meet the Defendant's liabilities. For these reasons, the discharge provided for by Section 727 of the Code should be denied.

### COUNT I
**(Exception To Discharge Under Section 523(a)(2))**

31. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-30 above with the same force and effect as if fully set forth herein.

32. Defendant made knowingly false representations or made representations in reckless disregard of the truth in relation to the Construction Agreement and the building of Plaintiffs' home by, among other things, inducing Plaintiffs to make advance payments to

9

Defendant for work that Defendant never intended to perform and for inducing Plaintiffs to make payment for fraudulent change orders.

33. Defendant made the statements with the intent to deceive Plaintiffs.

34. Defendant intended to induce Plaintiffs to rely on the false statements and Plaintiffs, in fact, relied upon the false statements.

35. Plaintiffs' reliance on the false statements was justifiable and Plaintiffs were damaged by their reliance on the false statements.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment for Plaintiffs and against Defendant on Count I, thereby excepting from discharge an amount equal to at least the amount of the Judgment, plus interest and costs; and

b. Grant Plaintiffs such other and further relief as the Court deems just and proper.

## COUNT II
### (Exception To Discharge Under Section 523(a)(4))

36. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-35 above with the same force and effect as if fully set forth herein.

37. Premised on the insolvency of Verrill & Chase on and prior to the date of the Construction Agreement and premised on Defendant's ownership interest and position as a principal of Verrill & Chase, Defendant owed a fiduciary duty to Plaintiffs as creditors of Verrill & Chase at the time that payments were made to Defendant by Plaintiffs under the Construction Agreement and at the time that Defendant failed to perform in accordance with the terms of the Construction Agreement.

38. While acting as a fiduciary of Plaintiffs, Defendant engaged in fraud or defalcation by, among other things, inducing Plaintiffs to make "change order" payments to

Defendant for work that Defendant agreed to perform under the terms of the original Construction Agreement.

39. In addition, while acting as a fiduciary of Plaintiffs, Defendant engaged in fraud or defalcation by, among other things, inducing Plaintiffs to make advance payments to Defendant for work that Defendant never intended to perform.

40. By taking and using Plaintiffs' property in the manner described above, Defendant embezzled property of Plaintiffs for his own benefit, with fraudulent intent.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment for Plaintiffs and against Defendant on Count II, thereby excepting from discharge an amount equal to at least the amount of the Judgment, plus interest and costs; and

b. Grant Plaintiffs such other and further relief as the Court deems just and proper.

### COUNT III
**(Exception To Discharge Under Section 523(a)(6))**

41. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-40 above with the same force and effect as if fully set forth herein.

42. By accepting the monies from Plaintiffs under the Construction Agreement and by using such monies for his own purposes rather than utilizing the monies as required by the Construction Agreement and by inducing Plaintiffs to make the advance payments and inducing Plaintiffs to make payments to Defendant for false change orders, Defendant caused willful and malicious injury to Plaintiffs and/or the property of Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment for Plaintiffs and against Defendant on Count III, thereby excepting from discharge an amount equal to at least the amount of the Judgment, plus interest and costs; and

b. Grant Plaintiffs such other and further relief as the Court deems just and proper.

## COUNT IV
**(Exception To Discharge Under Section 727(a)(2))**

43. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-42 above with the same force and effect as if fully set forth herein.

44. Within the one (1) year period prior to the Petition Date, Defendant transferred property of Defendant, namely the Mercedes and the snowmobile (among other things), to third-parties, including relatives of Defendant.

45. These transfers of property of Defendant were done with the actual intent to hinder, delay or defraud Plaintiffs because Defendant admitted to transferring this property in order to prevent the property from being turned over to Plaintiffs as required by the Turnover Order.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment for Plaintiffs and against Defendant on Count IV, thereby denying the Defendant the discharge provided by Section 727 of the Code; and

b. Grant Plaintiffs such other and further relief as the Court deems just and proper.

## COUNT V
**(Exception To Discharge Under Section 727(a)(5))**

46. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-45 above with the same force and effect as if fully set forth herein.

47. The Defendant transferred property of the Defendant, namely the Mercedes and the snowmobile (among other things), to third-parties in the face of the Turnover Order that required the Defendant to turnover these assets to Plaintiffs.

48. The Defendant failed to explain satisfactorily the loss of these assets or the deficiency of assets to meet the Defendant's liabilities.

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment for Plaintiffs and against Defendant on Count V, thereby denying the Defendant the discharge provided by Section 727 of the Code; and

b. Grant Plaintiffs such other and further relief as the Court deems just and proper.

Dated: May 11, 2007

/s/ George J. Marcus
George J. Marcus, Esq.
D. Sam Anderson, Esq.

Marcus, Clegg & Mistretta, P.A.
100 Middle Street – East Tower
Portland, Maine 04101
(207) 828-8000

Counsel for Plaintiffs
John and Cathy Costa

S:\C\Costa, John\Verrill & Chase\Scott R. Verrill Chapter 7\Adversary Proceeding\05.11.07.Adversary Complaint.doc